## CALDWELL v. GEORGE SPROULL CO., Inc.*
### No. 5139.

Court of Appeal of Louisiana. Second Circuit.
Dec. 13, 1935.

---

*Rehearing denied Dec. 31, 1935.

Mabry & Carstarphen, Cook & Cook, and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellant.

Julius T. Long, of Shreveport, for appellee.

TALIAFERRO, Judge.

Defendant is engaged in the manufacture and sale by wholesale and retail of paints, oils, varnishes, etc., and has been so engaged for some ten years. Its charter authorizes it so to do. The wholesale and retail store is located in the city of Shreveport, and eleven persons are required to conduct that line of its business. The manufacturing plant, or factory, is some three miles distant and only three persons are necessary to operate it. The personnel of the two businesses is entirely different. As the Shreveport store needs manufactured products to maintain its stock and supply its trade, requisition is made on the plant therefor and delivery thereof is made by truck operated from, and by an employee at, the store. The entire output of the factory is sold by and through the city store; but merchandise is sold from the store not manufactured by defendant.

In the month of January, 1934, defendant was having its large sales room renovated and employed plaintiff to hang paper therein, and while performing this work, a ladder, forming the base of a platform on which he was standing, broke. He fell about nine feet, landing on his right foot. Serious injury to the ankle directly resulted from the fall. He instituted this suit to recover compensation at the rate of $20 per week for a term of 400 weeks, and, in the alternative, sued for damages as in case of tort under article 2315 of the Civil Code. The alternative demand was abandoned during trial. We are therefore only concerned with the demand for compensation.

Defendant denies liability of any kind to plaintiff. Its position being that since plaintiff, when injured, was not performing work at its manufacturing plant, a hazardous business, but in its mercantile store, a nonhazardous business, his case is not compensation under the statute (Act 20 of 1914, as amended); and, further, that it is not engaged in the business of hanging paper as a vocation, nor as an incident to any line of its several businesses. Defendant is not now, nor has it ever, engaged in the business of painting and papering as a trade or vocation.

There was judgment for plaintiff for 125 weeks at $20 per week, and defendant appealed.

This case squarely presents the primary question: Where an employer is engaged in two distinct lines of business, neither incidental to the other, one hazardous under the statute, the other nonhazardous, and an employee is injured while performing services rendered and to be rendered exclusively to and in the nonhazardous business, is he entitled to compensation?

Plaintiff's position may be best understood from the following excerpts taken from his counsel's brief:

"Plaintiff contends that in the building in which he was at work when injured, the defendant carried on much of its business connected with its paint factory; that since

the offices were there, that building was used by it as a warehouse, as its only office and place to sell and buy; that it was part of the factory. Plaintiff further contends that since defendant was in the business of leasing, buying, selling and mortgaging real estate, and doing 'all acts of a general nature incidental to or connected with said named businesses,' that plaintiff can recover under the following business as defined by the Employers' Liability Act: 'work in any of the building or metal trades in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances.' To say the least, repairing this leased building and decorating it so it could be used in this real estate business, was 'incidental to or connected with said businesses', as expressed in the charter of defendant."

The statute declares to be hazardous the occupation of operating warehouses. Such a business is a distinct and well-defined one. A "warehouseman" is one "lawfully engaged in the business of storing goods for profit." Act No. 53 of 1920. The goods referred to, of course, being goods of third persons for which negotiable receipts are issued. Act No. 221 of 1908. A permit for the operation of such a business has to be obtained from the clerk of the civil district court wherein the business is carried on. Section 1 of Act No. 82 of 1926. Other requirements are prescribed by the statute before a person may legally become a warehouseman. Surely, because a wholesale dealer stores surplus stock bought or manufactured by him, in the basement of his building, as is done by defendant, he does not thereby engage in the occupation of operating a warehouse. Such a room is no more than a storage room. It is in no sense a warehouse. The position of plaintiff here discussed is not tenable. Equally so is that advanced that because defendant chose to embellish the interior of its leased building by having it repainted and repapered, it thereby engaged in the business of *decorating* buildings. The more serious contention of plaintiff is that the relation of the plant operations and those of the wholesale and retail store are so closely interwoven that the two, in legal contemplation, amount to but one business or vocation; and that even though a workman is injured while performing services exclusively in the building where the retail and wholesale business is conducted, he is none the less entitled to compensation. The facts of the case impel

us to an opposite conclusion. While it is true that when goods are brought from the factory to the store, there is a charge made therefor by the store's bookkeeper, and that all clerical work needful to the conduct of both ends of the defendant's business is attended to by the employees in the store, we do not think this alters the situation. It does not efface the fact that defendant is engaged in at least three distinct occupations, viz., (1) manufacturing, (2) wholesale, and (3) retail mercantile business. An occupational license for the one does not authorize conduct of the others.

Plaintiff had been in defendant's employ only two days. He was engaged to do the particular service he was performing when hurt. In the discharge of his duties, it was not necessary for him to have, and in fact he had not had, any contact with the manufacturing plant. He was hired solely to hang paper in the store building. Therefore, the fact that defendant operated the plant, a hazardous business, had no causal connection, proximate or remote, with the accident; and if defendant was engaged only in the wholesale and retail business of selling paints, oils, varnishes, etc., it would hardly be contended that plaintiff's case is compensable. Charity Hospital v. Morgan (La. App.) 143 So. 508; Adams v. Hicks Company, Ltd. (La.App.) 149 So. 242; Stockstill v. Sears-Roebuck & Co. (La.App.) 151 So. 823.

Such a business is not declared hazardous by the statute.

Defendant operated its wholesale and retail business several years before it acquired the manufacturing plant. The need of a factory to produce the merchandise it was selling only arose after the success of the original lines of business made the acquisition thereof advantageous. The wholesale and retail businesses are not incidental to the factory, but the factory is, in a way, an incident to the other businesses. The latter is not dependent upon the former, but the converse is not true.

71 Corpus Juris, pp. 365, 366, § 78, lays down what we believe to be the correct rule prevailing generally, if not universally, in other jurisdictions. It is:

"An employer may conduct different departments or types of business some of which are within the compensation act and some of which are not, or distinct businesses as to some of which, under an elective act, he may elect to come under the terms

of the act, and as to others of which he may elect not to be governed by the Act."

"The fact that an employer is engaged in an exempted occupation does not relieve him of liability for injuries sustained in another business or department conducted by him which is within the act; *conversely, the fact that he is engaged in an occupation which is within the act creates no liability as to injuries sustained in another business or department conducted by him which is not within the act."*

In support of this doctrine, cases from Illinois, Massachusetts, New York, Oklahoma, and Utah are cited; none is cited holding to the contrary. The reason of the rule seems obvious. If the duties of the employee are exclusively discharged to a nonhazardous business of the employer (who also conducts a hazardous business), he is not brought in contact with nor exposed in any manner to the dangers of the hazardous business. The hazardous business may be removed from the nonhazardous, even to the extent of being in a different state and, if so, what good reason could be given for saying that because of the existence of the hazardous business, an employee injured while working in the nonhazardous, is entitled to compensation? In determining such a question, we have to look more to the businesses as units, than to their ownership. The act provides for the payment of compensation to every person injured while "performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations." Act No. 20 of 1914, § 1, subd. 2.

To recover under the section, certain conditions must exist:

1. The employee must have been performing services arising out of and incidental to his employment;

2. The services being rendered must have been in the course of the employer's trade, business, or occupation; and,

3. The business, trade, or occupation must be hazardous within the terms of the statute.

The services being rendered by plaintiff when injured were to his employer's business as a wholesaler and retailer, and not as a manufacturer.

 Since we have reached the conclusion that because plaintiff happens to own and operate a factory which manufactures the larger part of the products sold by it, is of no real significance in arriving at a correct decision in the case, the issues are very simple. Plaintiff cannot recover for two reasons, viz.: (1) Defendant's city business is not hazardous; and (2) it is not engaged in hanging wall paper as a trade, business or occupation.

In the leading case of Shipp v. Bordelon, 152 La. 795, 94 So. 399, 400, referring to the provision contained in subsection 2 of section 1 of the Workman's Compensation Act (Act No. 20 of 1914), that the service of the employee must be performed "in the course of his employer's trade, business or occupation," the court said:

"In other words, the work must be of that character, and the employer must be engaged in that line of work as a trade, business, or occupation, in order that the act may apply."

In Jackson v. Young, 6 La.App. 854, after citing the Shipp v. Bordelon Case, it is held:

"It is not enough that the work done should be hazardous if it be not also incident to or in the course of the trade, business or occupation of the employer which is within itself hazardous under the statute."

In Charity Hospital of La. v. Board of School Directors (La.App.) 140 So. 60, 62, in referring to Shipp v. Bordelon, we find the following:

"It is clearly pointed out by the court in that decision that the employer must be engaged in a trade, business, or occupation in reference to which the laborer is employed."

In this case it is held that defendant school board was not engaged in painting or repairing school buildings as a trade, business, or occupation.

In the present case, it is equally plain that defendant was not engaged in the trade or occupation of paper hanging.

For the reasons assigned, the judgment appealed from is annulled, reversed, and set aside; plaintiff's suit dismissed, and his demands rejected at his cost.